IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
October 17, 2001 Session

## MICHAEL STANLEY DOTSON v. STATE OF TENNESSEE

**Appeal from the Criminal Court for Wilson County**
**No. 97-0934     J. O. Bond, Judge**

---

**No. M2001-00045-CCA-R3-PC - Filed March 8, 2002**

---

The petitioner, Michael Stanley Dotson, appeals the Wilson County Criminal Court's denial of his petition for post-conviction relief from his guilty plea to first degree felony murder and resulting sentence of life imprisonment. He contends that his guilty plea resulted from the ineffective assistance of counsel in that his trial attorneys (1) failed to challenge statements that the petitioner gave to the police incident to his illegal arrest; (2) failed to challenge statements that the petitioner gave to the police while he was being illegally detained; (3) failed to challenge statements that the petitioner gave to the police involuntarily; and (4) failed to investigate and develop an alibi defense. We affirm the trial court's denial of post-conviction relief.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

JOSEPH M. TIPTON, J., delivered the opinion of the court, in which DAVID H. WELLES and JERRY L. SMITH, JJ., joined.

Lawrence Alan Poindexter, Lebanon, Tennessee, for the appellant, Michael Stanley Dotson.

Paul G. Summers, Attorney General and Reporter; Jennifer L. Bledsoe, Assistant Attorney General; Tom P. Thompson, Jr., District Attorney General; and David Durham, Assistant District Attorney General, for the appellee, State of Tennessee.

### OPINION

On April 27, 1998, the petitioner pled guilty to murdering William Adams. At the guilty plea hearing, the state presented the following factual account of the crime: On the afternoon of May 5, 1997, the victim's wife, Eileen Adams, arrived home with her sister and found the victim lying in the driveway. The victim was dead and had been stabbed multiple times. Mrs. Adams and her sister noticed that the phone lines to the Adams' house had been cut, there had been forced entry into the home, and the victim's wallet, containing American Express and Sears credit cards, was missing. Mrs. Adams and her sister saw a black pickup truck, with two white males inside, near the Adams' home.

The police obtained a videotape showing the petitioner and his co-defendant, Tommy Beard, using one of the victim's stolen credit cards at a gas station on the day of the murder. According to the state, Mr. Beard would have testified that on the day of the murder, the petitioner drove to where Mr. Beard was staying, and Mr. Beard left with the petitioner in the petitioner's pickup truck. Mr. Beard noticed a bloody shirt, a bloody knife, and bloody gloves in the truck. When Mr. Beard asked the petitioner about the items, the petitioner said that he had murdered a man. The petitioner and Mr. Beard drove to an area near the murder scene to hide the items. However, upon seeing Mrs. Adams and her sister at the murder scene, the petitioner and Mr. Beard decided to hide the knife and gloves in some brush behind the petitioner's father's house.

The weekend after the murder, Davis Edwards and the petitioner drove to the petitioner's father's house, and the petitioner retrieved the knife. The petitioner told Mr. Edwards that the knife had been used in a murder. Later, Mr. Edwards saw the petitioner throw the knife into the middle of a pond. When Mr. Edwards found out that the petitioner had been implicated in a murder, Mr. Edwards called the police and told them about seeing the petitioner dispose of the knife. The police recovered the knife from the pond. Tommy Beard told the police that the bloody gloves were behind the petitioner's father's house. The police recovered the gloves, and DNA testing revealed that the victim's blood was on the gloves.

The record reflects that the police searched the petitioner's apartment pursuant to a search warrant in the early morning hours of May 29, 1997. At 2:00 a.m., the police arrested the petitioner without an arrest warrant and took him to the Wilson County Jail. At 5:30 a.m., the petitioner signed a waiver of rights form and gave a written statement to the police. Sometime on the 29th, a mittimus was issued, ordering the petitioner's detention. According to the mittimus, the petitioner was "examined before" a judicial commissioner, and the commissioner found "sufficient cause" to believe the petitioner guilty of first degree murder. At 6:05 p.m. on the 29th, the petitioner signed another waiver of rights form and gave a second written statement to the police. Sometime the next day, May 30, Police Officer David Kennedy signed an affidavit of complaint against the petitioner, and an arrest warrant was issued. The affidavit of complaint provides,

> The victim's American Express Credit Card was [s]tolen during the course of the [m]urder. Michael Stanley Dotson along with a second individual has been recorded on a business surveillance video camera attempting to use the victim's stolen American Express Credit Card approximately 9-12 hours after the [m]urder. Michael Stanley Dotson has been interviewed by your affiant and/or other law enforcement personnel working with your affiant. In said interview Michael Stanley [Dotson] has admitted being at the residence of the victim at the time the victim was killed, and has admitted to disposing of the murder weapon and gloves which were worn during the course of the murder. Based on information supplied by Michael Stanley Dotson your affiant's agency has recovered a pair of gloves which

> appeared to have human blood stains on them at the location supplied
> by Michael Stanley Dotson. . . .

At 9:25 p.m. on the 30th, the petitioner signed a third waiver of rights form and gave a third written statement to the police. In that statement, the petitioner admitted killing the victim. The state filed a notice to seek a sentence of life without parole. On April 27, 1998, the petitioner pled guilty, and the trial court sentenced him to life imprisonment.

At the hearing for post-conviction relief, the petitioner's primary trial attorney testified that at the time he was retained to represent the petitioner, he had been an attorney for a little over two years and had conducted two criminal jury trials. He said that the petitioner did not have an alibi defense and that the petitioner never mentioned having an alibi or alibi witnesses. He said that when the state filed for a notice of alibi, the defense responded that it would not rely on an alibi defense. He said that before filing the response, he discussed it with the petitioner. He said that although the petitioner denied committing the murder, the petitioner admitted being at the murder scene when the victim was killed.

The attorney acknowledged that he discussed with the petitioner everything the defense received from the state. He also acknowledged filing a motion to suppress the petitioner's three written statements and that the motion raised seven issues as to why the statements should be suppressed. He acknowledged that the motion to suppress did not allege a Fourth Amendment violation of the petitioner's constitutional rights and that he did not see any basis for alleging such a violation.

On cross-examination, the attorney testified that at the time he was retained to represent the petitioner, he was not a member of the National Association of Criminal Defense Lawyers and had not attended any specialty criminal law seminars. However, he said that he felt comfortable taking the petitioner's case. He said that he became involved with the petitioner's case after the preliminary hearing had taken place. He acknowledged having an opportunity to review the preliminary hearing transcript and the May 30 arrest warrant and said that he knew the petitioner had been arrested without a warrant on May 29, 1997. Upon reviewing the affidavit of complaint, the attorney acknowledged that the affidavit was based in large part on statements that the petitioner gave to the police after the petitioner's warrantless arrest. However, he said that he did not believe this violated the petitioner's Fourth Amendment rights. He said that the petitioner was fairly adamant about wanting to go to trial.

Post-conviction counsel also showed the witness a Right to an Attorney form signed by a judicial commissioner on May 29, 1997, and setting the petitioner's arraignment for June 12, 1997. The petitioner's trial counsel acknowledged that although there was a line on the form for the petitioner's signature and a box to check if the petitioner refused to sign the form, the petitioner had not signed the form and the box was not checked. The witness acknowledged that he was familiar with Rule 5(a), Tenn. R. Crim. P., and that a Rule 5(a) violation was a factor to be considered when analyzing a possible Sixth Amendment violation.

The attorney acknowledged that the state provided him with a statement taken from the petitioner's co-defendant, Tommy Beard. He acknowledged that in the statement, Mr. Beard said that at 10:47 a.m. on the day of the murder, Mr. Beard placed a telephone call to the petitioner's home in Hermitage, Tennessee and talked to the petitioner. The attorney also acknowledged that the victim's death certificate listed the victim's time of death as 10:38 a.m. and that it took approximately forty-five minutes to drive from the victim's home to the petitioner's home. He said that he had considered the evidence as a possible alibi defense for the petitioner.

The petitioner's co-counsel testified that at the time of the murder, he had been practicing law since 1977 and worked for the Public Defender's Office. He said that he was appointed to represent the petitioner and that he conducted the petitioner's preliminary hearing. He said that after the preliminary hearing, the petitioner retained an attorney and that he was removed from the petitioner's case. He said that sometime later, he was reappointed by the trial court to assist the petitioner's retained attorney.

The petitioner's co-counsel testified that nothing indicated to him that the petitioner had been unlawfully detained at the Wilson County Jail. He said that he thought that the petitioner's three statements to the police would be admissible in court. He said that the defense investigated the possible alibi defense raised by Mr. Beard's telephone call and the victim's time of death but never found anything to support the alibi defense. He said that the petitioner never offered an alibi.

On cross-examination, the petitioner's co-counsel acknowledged that the petitioner's statements to the police were very damaging and that he would have recommended a plea to the petitioner. He also acknowledged that some of the petitioner's statements to the police were used to establish probable cause in the affidavit of complaint. He said that although the petitioner's co-defendant was the person actually using the victim's credit card in the surveillance video, the petitioner also was present. He said that after he was reappointed to the petitioner's case, he obtained experts and assisted retained counsel with preparing motions. He said that there was not a long time delay between the defendant's arrest and issuance of the petitioner's arrest warrant. He acknowledged that a commissioner signed a mittimus on May 29. He said that the defense could have argued at trial that there were problems with the state's time line of the murder. He said that the petitioner never indicated to him that the petitioner was at the scene of the crime or murdered the victim. He said that he did not recall the petitioner saying anything about not being allowed to make a telephone call.

The trial court denied the petitioner's petition for post-conviction relief, finding that there was no Fourth Amendment violation of the petitioner's constitutional rights and that the petitioner's trial attorneys were not ineffective for failing to raise a Fourth Amendment claim. The trial court found that the petitioner was lawfully arrested and detained and that he gave a confession to the murder within hours of receiving the proper Miranda warnings.

The petitioner contends that his trial counsel was ineffective because his attorneys (1) failed to allege in the motion to suppress that he gave his written statements to police pursuant to an illegal

arrest; (2) failed to allege in the motion to suppress that he gave his statements incident to an illegal detention; (3) failed to allege in the motion to suppress that he gave his statements involuntarily because the police violated Rule 5(a), Tenn. R. Crim. P., and because he was denied the right to make a telephone call; and (4) failed to investigate adequately and raise an alibi defense. The state contends that the petitioner received the effective assistance of counsel. We agree with the state.

Under the Sixth Amendment, when a claim of ineffective assistance of counsel is made, the burden is on the petitioner to show that (1) counsel's performance was deficient, and (2) the deficiency was prejudicial in terms of rendering a reasonable probability that the result of the trial was unreliable or the proceedings fundamentally unfair. Strickland v. Washington, 466 U.S. 668, 687, 104 S. Ct. 2052, 2064 (1984); see Lockhart v. Fretwell, 506 U.S. 364, 368-72, 113 S. Ct. 838, 842-44 (1993). The Strickland standard has been applied to the right to counsel under article I, section 9 of the Tennessee Constitution. State v. Melson, 772 S.W.2d 417, 419 n.2 (Tenn. 1989). When a petitioner claims that ineffective assistance of counsel resulted in a guilty plea, the petitioner must prove that counsel performed deficiently and that but for counsel's errors, the petitioner would not have pled guilty and would have insisted upon going to trial. Hill v. Lockhart, 474 U.S. 52, 59, 106 S. Ct. 366, 370 (1985).

In Baxter v. Rose, 523 S.W.2d 930, 936 (Tenn. 1975), our supreme court decided that attorneys should be held to the general standard of whether the services rendered were within the range of competence demanded of attorneys in criminal cases. Further, the court stated that the range of competence was to be measured by the duties and criteria set forth in Beasley v. United States, 491 F.2d 687, 696 (6th Cir. 1974) and United States v. DeCoster, 487 F.2d 1197, 1202-04 (D.C. Cir. 1973). Also, in reviewing counsel's conduct, a "fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." Strickland, 466 U.S. at 689, 104 S. Ct. at 2065; see Hellard v. State, 629 S.W.2d 4, 9 (Tenn. 1982).

In order for a petitioner to succeed on a post-conviction claim, the petitioner must show the allegations set forth in his petition by clear and convincing evidence. Tenn. Code Ann. § 40-30-210(f). A trial court's findings of fact in a post-conviction hearing are conclusive on appeal unless the evidence in the record preponderates against those findings. See Butler v. State, 789 S.W.2d 898, 899 (Tenn. 1990). We review the trial court's conclusions of law under a purely de novo standard. Fields v. State, 40 S.W.3d 450, 457 (Tenn. 2001). Post-conviction relief may only be given if a conviction or sentence is void or voidable because of a violation of a constitutional right. Tenn. Code Ann. § 40-30-203.

## I. ILLEGAL ARREST AND DETENTION

The petitioner contends that he received the ineffective assistance of counsel because his trial attorneys failed to allege in the motion to suppress that he gave his three written statements to the police incident to an illegal arrest and detainment. Specifically, he claims that his arrest was a

violation of the Fourth Amendment because the Wilson County Sheriff's Department did not have probable cause to arrest him. He also claims that he was unlawfully detained because the police did not obtain an arrest warrant until May 30 and unreasonably delayed his right to a prompt probable cause hearing in violation of Gerstein v. Pugh, 420 U.S. 103, 125, 95 S. Ct. 854, 869 (1975) (a determination of probable cause "must be made by a judicial officer either before or promptly after arrest"). See County of Riverside v. McLaughlin, 500 U.S. 44, 56, 111 S. Ct. 1661, 1670 (1991) ("judicial determinations of probable cause within 48 hours of arrest will, as a general matter, comply with the promptness requirement of Gerstein"); State v. Huddleston, 924 S.W.2d 666, 671-72 (Tenn. 1996) (a hearing within forty-eight hours may still violate Gerstein if the probable cause hearing was delayed unreasonably).

Initially, we note that in his petition for post-conviction relief, the petitioner contended that "but for his denial of effective assistance of counsel he would have demanded to go to trial." However, the petitioner did not testify at the post-conviction hearing and did not call any witnesses to testify about the circumstances surrounding his arrest and detainment. Although the technical record reflects that the petitioner subpoenaed several law enforcement officers to the post-conviction hearing, the petitioner inexplicably withdrew the subpoenas prior to the hearing. Moreover, according to the petitioner's brief, his and other witnesses' testimony was unnecessary because

> there were no challenges made to the facts alleged in the Petition as all parties involved agree that they are true. The Petitioner asserts that he is entitled to relief based upon the record that was before the Court prior to any testimony being offered. The State agreed that this case could be decided upon the record that was before the Trial Court.

The trial court concluded that the petitioner was lawfully arrested and detained pursuant to a murder investigation, and, therefore, the petitioner's trial attorneys were not ineffective for failing to raise those issues in a motion to suppress. As previously noted, the petitioner must prove the allegations set forth in his petition by clear and convincing evidence. The burden is on him to demonstrate that he suffered prejudice because the police did not have probable cause to arrest him or because his probable cause hearing was delayed unreasonably. The petitioner has failed to produce any evidence regarding lack of probable cause for his arrest. Moreover, he has failed to produce any evidence that the police delayed obtaining an arrest warrant in order to gather additional evidence against him. We note that the language of the May 29 mittimus indicates that the petitioner appeared before a judicial commissioner, who determined probable cause at that time. The petitioner has not demonstrated that the police arrested him without probable cause or that his probable cause hearing was delayed unreasonably. He is not entitled to relief.

## II. INVOLUNTARY STATEMENTS

Next, the petitioner contends that he received the ineffective assistance of counsel because his trial attorneys failed to allege in the motion to suppress that he gave his three written statements to the police involuntarily. Specifically, he contends that he gave his written statements

involuntarily because the Wilson County Sheriff's Department did not take him before a magistrate without unnecessary delay in violation of Rule 5(a), Tenn. R. Crim. P. In addition, he contends that he gave written statements involuntarily because the Sheriff's Department did not allow him to make a telephone call.

The trial court did not address this issue. However, we believe that the petitioner cannot prevail in his claim. As previously noted, the petitioner did not testify at the post-conviction hearing and called no witnesses. The only witnesses who testified at the post-conviction hearing were the petitioner's two trial attorneys, and neither of them testified as to the voluntariness of the petitioner's statements to the police. Without presenting any proof at the post-conviction hearing that he made his statements involuntarily, the petitioner cannot demonstrate that he was prejudiced by his trial attorneys' failure to allege the involuntariness in a motion to suppress. The petitioner is not entitled to relief on this issue.

### III. ALIBI DEFENSE

Finally, the petitioner contends that he received the ineffective assistance of counsel because his trial attorneys failed to investigate adequately and present an alibi defense. The state contends that the petitioner has failed to show that counsel's performance was deficient or that he was prejudiced by the deficiency. We believe that the petitioner is not entitled to relief.

Again, the trial court did not address this issue. However, based upon the record before us, we do not believe that the petitioner can prevail on this claim. Both of the petitioner's trial attorneys testified at the post-conviction hearing that the petitioner never offered an alibi or alibi witnesses. In addition, the petitioner's lead trial counsel testified that the petitioner told him that the petitioner was present at the murder scene when the victim was killed. The petitioner's post-conviction counsel alluded through his questioning of trial counsel that phone records and the victim's time of death provided the petitioner with an alibi defense. However, the petitioner did not testify and offered no witnesses to support an alibi defense. Without offering any proof as to an alibi, the petitioner cannot demonstrate that he was prejudiced by his trial attorneys' failure to investigate and raise an alibi defense. The petitioner is not entitled to relief.

Based upon the foregoing and the record as a whole, we affirm the judgment of the trial court.

_____
JOSEPH M. TIPTON, JUDGE